UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANDRE LEE COLEMAN,

    Plaintiff,

v.                                                  Case No. 2:05-cv-158
                                                 HON. RICHARD ALAN ENSLEN

DENISE L. GERTH, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

        Plaintiff Andre Lee Colemen, an inmate currently confined at the Ionia Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Case Manager Denise L. Gerth, Case Manager Peggy Carberry, Hearing Investigator Bruce Hobson, Grievance Coordinator Wayne Trierweiler, Grievance Coordinator Jennifer Farley, and Warden Barbara Bouchard, all of whom are employed at the Alger Maximum Correctional Facility (LMF).

        Plaintiff alleges in his complaint that prior to March 7, 2002, Plaintiff had written a series of grievances on Defendant Gerth, which were often not investigated by Defendant Carberry. On March 7, 2002, while Defendant Carberry was interviewing Plaintiff on a grievance against Defendant Gerth she threw her hands up and declared "All lies, all lies." Defendant Carberry then left Plaintiff's cell. Plaintiff states that Defendant Gerth came to Plaintiff's cell after he wrote the grievance and demanded that Plaintiff come to the door to talk about the grievance. Plaintiff ignored the demand. A few minutes later, Defendant Gerth took the kite out of the top of Plaintiff's door and left. Later than evening, Plaintiff was served notice of a major misconduct written by Defendant

Gerth, which claimed that Plaintiff had called her a "saggy ass bitch" when she told him to go to the back of his cell and to stop watching her. Plaintiff contends that the misconduct was fabricated in retaliation for Plaintiff's earlier grievance.

Plaintiff asked Defendant Hobson to obtain the video in order to verify that Defendant Gerth was lying. In addition, Plaintiff sought Defendant Carberry as a witness regarding the grievance. Defendant Hobson refused to obtain the video and Defendant Carberry refused to answer any of Plaintiff's questions. Plaintiff was transferred to Marquette Branch Prison (MBP) on March 22, 2002. Plaintiff received a misconduct hearing on March 27, 2002, and was subsequently found guilty. Plaintiff submitted a timely request for rehearing, which was denied on July 3, 2002. While at MBP, Defendant Bouchard forfeited Plaintiff's good time on a separate major misconduct for threatening behavior in violation of MDOC rules, which required a review of Plaintiff's prison file. In addition, the ordered forfeiture was for 20 days, but only 15 days was available. Plaintiff filed a grievance, which was rejected by Defendant Trierweiler as untimely. However, Plaintiff states that under MDOC policy, there are exceptions to the timeliness requirement when a prisoner is not immediately aware of the violation and when a prisoner is transferred. Plaintiff claims that both exceptions applied to him. Plaintiff attempted to file a step II grievance by requesting a form on May 22, and again on September 22, 2002. Plaintiff did not received a response. Plaintiff filed a grievance regarding the denial of a step II appeal form, and appealed the denial of that grievance to step III. Plaintiff also initiated two separate complaints for sending a series of step I grievance responses through the "non existent inner departmental mail" in order to thwart Plaintiff's ability to appeal the responses.

Plaintiff claims that the actions of Defendants Trierweiler, Farley, and Bouchard were aimed towards covering up the retaliation of Defendant Gerth. In his complaint, Plaintiff states

"[e]ffectively they covered up the initiation of a room search to confiscate Plaintiff's legal papers and exhibits February 27, 2002." Defendant Gerth allegedly issued a notice of intent and confiscated a petition for judicial review. As a result, Plaintiff missed the deadline for filing petitions for judicial review with regard to major misconducts for insolence and interference with the administration of rules.

Plaintiff claims that Defendants' actions violated his rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiff is seeking compensatory and punitive damages, as well as injunctive relief.

Presently before the Court is the Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket #23). Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment

motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In their motion for summary judgment, Defendants state that they are entitled to dismissal of this action pursuant to the total exhaustion rule. Defendants contend that Plaintiff failed to exhaust the rejection of his Step I grievance against Defendant Bouchard regarding the forfeiture of his sentencing credit days. Defendants cite *Jones-Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005), in support of their claim that this entitles them to dismissal of the entire action. However, another panel of the Sixth Circuit has more recently held that *Jones-Bey* was improperly decided. In *Spencer v. Bouchard,* 449 F.3d 721 (6th Cir, June 6, 2006), the court held that the "partial exhaustion rule" is the law of this Circuit requiring the dismissal of only those claims that are unexhausted and allowing the case to proceed on the exhausted claims. Therefore, the undersigned recommends that the Court follow the "partial exhaustion rule," until the issue is resolved by the Supreme Court in *Williams v. Overton*, 126 S.Ct 1463; *Jones v. Bock*, 125 S.Ct. 1462 (2006).

Moreover, the undersigned notes that Plaintiff has alleged that he did not file a step II or III appeal because his repeated requests for a grievance form were ignored. Plaintiff states that he sent a request for a step II appeal form to Defendant Farley, but received a response from Defendant Trierweiler stating that the step II appeal form was sent on May 22, 2002. However,

Plaintiff never received the form. Plaintiff sent a second request, which was denied. Plaintiff then initiated a grievance regarding this denial, which was rejected. Plaintiff's step II and III appeals regarding this grievance were denied. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). Plaintiff's complaint shows that he was unable to obtain a step II appeal form as a result of Defendants' actions. Therefore, an appeal of the grievance rejection on Defendant Bouchard was not "available." The undersigned concludes that Plaintiff has sufficiently alleged exhaustion of his claims against Defendant Bouchard.

Defendants also contend that Plaintiff has failed to state a meritorious claim for retaliation against Defendant Gerth. In his complaint, Plaintiff claims that Defendant Gerth wrote a misconduct ticket on him on March 7, 2002, in retaliation for prior grievances. Plaintiff was found guilty of the misconduct on March 28, 2002. Defendants contend that this claim is conclusory and that because he was found guilty of the misconduct, his claim of retaliatory motive must be dismissed.

In Plaintiff's response to the motion for summary judgment, he states that on January 18, 2002, Resident Unit Officer Robert Masters completed a monthly behavior review that indicated that Plaintiff's status was "good to fair." Defendant Gerth subsequently changed the rating to fair and stated that Plaintiff was argumentative with staff and did not follow directions. On January 26, 2002, Resident Unit Officer Brian Holman interviewed Plaintiff and wrote that he did not agree with the "reclass comments." Plaintiff states that because of Defendant Gerth's "racial animus" he initiated a grievance against Defendant Gerth for improperly acting as part of the security classification committee team. Plaintiff also wrote a grievance for improperly changing his review.

Defendant Gerth immediately retaliated by misdirecting legal papers which were supposed to go to Plaintiff's legal agreement partners to the inspector's office. On January 23, 2002, Defendant Gerth authored a notice of intent to terminate Plaintiff's legal agreements. Less than 24 hours later, Defendant Gerth's supervisor upheld the notice of intent to terminate the agreements. Defendant Gerth knew that Plaintiff had a critical court deadline, but refused fo forward the legal documents to legal agreement partner Clark so that he could meet the February 19, 2002, deadline to file a petition for judicial review. On February 6, 2002, Plaintiff mailed all his legal material to prisoner Clark so that the filing deadline could be met. However, the mail room stopped the mail and contacted Defendant Gerth. Unknown to Plaintiff, these pleadings were held until February 15, 2002. Plaintiff claims that Defendant Gerth's conduct was motivated by a desire to retaliate against him.

Defendants offer a copy of the misconduct hearing report for the March 7, 2002, insolence charge. In the "reason for finding" section, the hearing officer noted:

> Ms. Gerth stated in the misconduct report that while on the wing prisoner Coleman starred [sic] at her and called her a saggy ass bitch. The statement by Ms. Gerth is believed as it is logical and consistent in detail, and she has no reason to make a misstatement in the record. It is noted prisoner Plamondon indicated Ms. Gerth was at prisoner Coleman's cell to get a kite.
>
> The prisoner's claim he didn't say it are [sic] not believed.
>
> From the above it is found the prisoner made the insolent statement to Ms. Gerth to harass her and he is guilty of the charge.

(*See* Exhibit B-1 to Defendants' brief in support of the motion for summary judgment.)

The undersigned notes that retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must

establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The filing of a prison grievance is constitutionally-protected conduct for which a prisoner cannot be retaliated against. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).

As noted above, after a hearing was held for the misconduct ticket, Plaintiff was found guilty of the major misconduct violation. "A finding of guilt based upon some evidence of a violation of prison rules essentially checkmates a retaliation claim. *Lewis v. Turner*, 16 Fed Appx 302, 304 (6th Cir. 2001) citing *Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir. 1994). It is clear that Defendant Gerth was justified in giving Plaintiff the misconduct ticket. In the opinion of the undersigned, Plaintiff cannot show that Defendant Gerth retaliated against Plaintiff by writing the misconduct ticket.

In addition, Plaintiff claims that Defendants Trierweiler, Carberry, Hobson, and Farley conspired with Defendant Gerth and each other to cover up Defendant Gerth's retaliatory conduct. Defendants claim that they are entitled to summary judgment on Plaintiff's conspiracy claims because they are entirely conclusory. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989); *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985). In order to prove a civil

conspiracy, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, and that an overt act was committed in furtherance of the conspiracy. *Moore*, 890 F.2d at 834; *Hooks*, 771 F.2d at 943-944. In this case, Plaintiff failed to allege any facts indicating that Defendants shared a single plan. Therefore, the undersigned concludes that Plaintiff's claim of conspiracy is without merit.

Plaintiff claims that Defendant Gerth interfered with his right of access to the courts when she confiscated a petition for judicial review on February 27, 2002, and that Defendants Trierweiler, Farley and Bouchard covered up the theft. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an

inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

Defendants state that they are entitled to summary judgment on this claim because Plaintiff has failed to show that he was prejudiced by the alleged misconduct. Defendants offer the affidavit of Defendant Gerth, who attests that the petition for judicial review confiscated from Plaintiff actually belonged to prisoner Betts #145197. (*See* Exhibit A to Defendants' brief in support of the motion for summary judgment.) Furthermore, Defendants state that Plaintiff's petition for judicial review was rejected by the Ingham County Circuit Court because Plaintiff owed outstanding filing fees, not because it was untimely. (*See* Exhibit 3 to Plaintiff's complaint.) Defendants also state that the alleged confiscation occurred on February 28, 2002, and that the filing deadline was March 15, 2002. Therefore, Defendants assert that all Plaintiff had to do was redraft another petition, which need only indicate that review is being sought on a particular major misconduct conviction. The MDOC is required to submit the certified record of the hearing to the Circuit Court. Plaintiff does not address these contentions in his response to the motion for summary judgment. Therefore, because Plaintiff fails to support his claim that the petitions for judicial review that were confiscated actually belonged to him, or that he was prejudiced by the alleged misconduct, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's access to courts claims.

Plaintiff claims that Defendant Bouchard improperly forfeited 20 days of sentencing credits, when Plaintiff only had 15 days available for such forfeit. Defendants note that this error was corrected, referring to the "Time Review & Disposition" sheet for the February 11, 2002, forfeiture. (*See* Exhibit 6 to Plaintiff's complaint.) In the opinion of the undersigned, Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. *Zinermon v. Burch*, 494 U.S. 113, 127-28, 110 S. Ct. 975, 984 (1990). The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9, 100 S. Ct. 553, 558, n. 9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon*, 494 U.S. at 125, 110 S. Ct. at 983 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70, 94 S. Ct. 2963, 2981 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986).

Finally, Defendants claim that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir.

1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible

than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir.

1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, *supra*. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). As noted above, Defendants are entitled to summary judgment on Plaintiff's retaliation, access to courts and conspiracy claims because Plaintiff has failed to show that there is a genuine issue of material fact for trial. Therefore, the undersigned recommends that the court find that Defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendants' Motion for Dismissal and/or Summary Judgment (Docket #23) be granted and that this case be dismissed in its entirety. In addition, should the court adopt the report and recommendation in this case, Plaintiff's motions to produce and for extension of time to serve summons (docket #35 and #37) should be denied as moot.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   August 18, 2006